J-A14011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| STEPHANIE ALVAREZ, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TRANS BRIDGE LINES, INC. AND SCOTT GRIFFIN, | |
| Appellee | No. 3555 EDA 2016 |

Appeal from the Judgment Entered December 12, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2014-C-1621

BEFORE:  BENDER, P.J.E., BOWES, J., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 06, 2017**

Appellant, Stephanie Alvarez, appeals from the judgment entered on December 12, 2016,[1] after the trial court denied her motion for post-trial relief, in which she requested a new trial.  After careful review, we affirm.

_____

[1] Appellant purports to appeal from the October 19, 2016 order denying her post-trial motion.  Ordinarily, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions.  **See Johnston the Florist, Inc. v. TEDCO Constr. Corp.**, 657 A.2d 511 (Pa. Super. 1995).  Nevertheless, a final judgment entered during pendency of an appeal is sufficient to perfect appellate jurisdiction.  **Drum v. Shaull Equipment and Supply, Co.**, 787 A.2d 1050, 1052 n.1 (Pa. Super. 2001).  Here, Appellant filed a notice of appeal prematurely on October 31, 2016, prior to the entry of judgment.  However, the record reflects that judgment was entered on December 12, 2016.  In accordance with the Pennsylvania Rules of Appellate Procedure, we treat Appellant's notice of appeal as if it were filed after the entry of judgment and on the date thereof.  **See** Pa.R.A.P. 905(a)(5).  Hence, the instant appeal is properly before this Court.

The relevant facts and procedural history of this case were summarized by the trial court in the following portion of its October 18, 2016 Memorandum Opinion:[2]

> [Appellant] filed her complaint against [Appellees, Trans Bridge Lines, Inc. ("Trans Bridge") and Scott Griffin ("Mr. Griffin"),] on May 14, 2014, at Lehigh County Civil Action No. 2014-C-1621. This case arises from a pedestrian-bus accident that occurred on the rainy evening of June 1, 2012, at the intersection of Hamilton Street and American Parkway in Allentown, Pennsylvania. [Mr. Griffin] was the driver and operator of the 2006 MCI Passenger Bus that[,] while making a left turn with the green arrow[,] collided with [Appellant], as she crossed the street in the crosswalk. [Trans Bridge] is the corporation that owned the 2006 MCI Passenger Bus and employed [Mr. Griffin]. [Appellant's] [c]omplaint contained three counts. In Count I, [Appellant] alleged that [Trans Bridge] was negligent. In Count II, [Appellant] alleged that [Mr. Griffin] had been careless, reckless, and negligent in his actions in operating the bus and that he had committed negligence *per se*. Lastly, in Count III, [Appellant] alleged that, "[Mr.] Griffin's outrageous, intentional, willful, wanton and reckless conduct and indifference, as well as his appreciation of the risk of harm to which [Appellant] was exposed and his actions in conscious disregard of that risk and as a result of the vicarious liability of [Trans Bridge] for [Mr.] Griffin's acts and failure to act" merit the award of punitive damages.
>
> By Order of Court dated August 25, 2014, this [c]ourt sustained in part [Appellees'] preliminary objections to the complaint[,] striking from the complaint paragraph 21(1) in which [Appellant] alleged that [Mr. Griffin] had committed negligence *per se*. In [Appellees'] answer with new matter filed September 16, 2104, [Appellees] raised among other defenses [Appellant's] contributory and comparative negligence.

---

[2] The trial court's October 18, 2016 Memorandum Opinion is incorporated by reference into its Pa.R.A.P. 1925(a) opinion, filed on January 12, 2017.

The case proceeded to trial before the Honorable Lawrence J. Brenner in November of 2015. After [Appellant] had presented her case in chief, Senior Judge Brenner entered a compulsory non-suit on Count III of [Appellant's] complaint concerning punitive damages by order of court dated November 6, 2015, having found that the evidence of record did not support a finding of outrageous conduct necessary for punitive damages. On November 10, 2015, after a five-day jury trial … the jury returned a verdict finding that [Mr. Griffin] was not negligent. This was the first question on the verdict slip and the jury returned to the courtroom without answering any further questions on the verdict slip. The jury was polled on their verdict[,] and it was revealed that the verdict was unanimous.

Trial Court Opinion ("TCO"), 10/18/16, at 3-4 (citation to record and unnecessary capitalization omitted). Accordingly, the court entered a verdict in favor of Appellees and against Appellant. Appellant filed a motion for post-trial relief or, in the alternative, for a new trial, which was denied by order of court entered on October 19, 2016.

On October 31, 2016, Appellant filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant now presents the following issues for our review:

1. Did the lower court abuse its discretion and/or commit an error of law by failing to properly charge the jury on the law to be applied regarding (a) the duty of care of a motorist entering an intersection and (b) the duty of a common carrier?

2. Did the lower court abuse its discretion and/or commit an error of law in allowing any reference to the investigating officer's police report?

3. Did the lower court abuse its discretion and/or commit an error of law by dismissing [Appellant's] punitive damages claim arising from [Mr. Griffin's] distracted driving?

- 3 -

4. Was the jury's verdict contrary to the weight of the evidence?

5. Did the lower court abuse its discretion and/or commit an error of law by ruling on the admissibility of certain evidence at trial as enumerated herein effectively precluding [Appellant] from inquiring into relevant and probative areas that supported [Appellant's] version of the facts of the accident and call into question certain [*sic*] of the testimony of defense witnesses?

Appellant's Brief at 5-6 (unnecessary capitalization omitted).

To begin, we note our standard of review of the general denial of post-trial relief by a court following a jury's verdict:

> We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. **See Harman v. Borah**, 562 Pa. 455, 756 A.2d 1116, 1121-[22] (Pa. 2000). We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. **See id.** at 1122-[23]. If the alleged mistake concerned an error of law, we will scrutinize for legal error. **See id.** at 1123. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. **See id.** "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." **Id.** at 1123[;] **Petrecca v. Allstate Insurance Company**, 797 A.2d 322, 324 (Pa. Super. 2002).

**Paliometros v. Loyola**, 932 A.2d 128, 132 (Pa. Super. 2007) (quoting **Stalsitz v. Allentown Hospital, et al.**, 814 A.2d 766, 771 (Pa. Super. 2002)).

In her first claim, Appellant alleges that the trial court failed to properly charge the jury on the issues of the degree of care required at an intersection, the duty of a motorist approaching an intersection, and the

duty of a common carrier. Appellant's Brief at 21. Appellant avers that the court's rejection of her proposed jury instructions regarding the foregoing areas of law was contrary to the law, prejudicial to her, caused her irreparable harm, and allowed for confusion and misunderstanding on the part of the jury. *Id.* at 23, 29-30. However, we deem Appellant's argument to be without merit.

It has been well-established that:

> Under Pennsylvania law, our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial.

> Further, a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law.

*Phillips v. Lock*, 86 A.3d 906, 916 (Pa. Super. 2014) (quoting *Smith v. Morrison*, 47 A.3d 131, 134-35 (Pa. Super. 2012), *appeal denied*, 57 A.3d 71 (Pa. 2012) (citations and quotation marks omitted)). Jury instructions must be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury in its deliberations. *See Brill v. Systems Resources, Inc.*, 592 A.2d 1377, 1378 (Pa. Super. 1991).

Here, as noted in the trial court's opinion,

> the [] court charged the jury on the general law of negligence, ordinary care, duty of care, and factual causation. Additionally,

the trial court charged the jury on Section 3713 [*sic*][3] of the Motor Vehicle Code stating:

> A person shall not drive a vehicle in a careless disregard for the safety of persons or property. If you find that the [d]efendant violated this law, then you must find that [the d]efendant was negligent. If you find that the [d]efendant did not violate this law, then you must decide whether the defendant was negligent because he failed to act as a reasonably careful person would under the circumstances established by the evidence in this case.

Regarding negligent conduct and duty, the [c]ourt instructed the jury as follows:

> Negligence, otherwise known as carelessness, is the absence of ordinary care that a reasonably prudent person would use in the circumstances presented here. Again[,] circumstantial evidence.
>
> Negligent conduct may consist either of an act or a failure to act when there is a duty to do so. In other words, negligence is the failure to do something that a reasonably careful person would … do in light of all the surrounding circumstances established by the evidence in the case. It is for you to determine how a reasonably prudent person would act in those circumstances. Use your common sense when you are reviewing it.

TCO at 11 (citations to the record omitted).

In addition to the foregoing instructions, Appellant proposed the following non-standard jury instructions, which were rejected by the court:

DUTY OF MOTORIST APPROACHING AN INTERSECTION

The duty of a motorist, when approaching a street intersection[,] is to be highly vigilant and to maintain such control that he can

_____

[3] Based on our review of the Motor Vehicle Code, we believe that the trial court meant to reference 75 Pa.C.S. § 3714, which defines "careless driving," rather than Section 3713, which governs railroad trains and the blocking of roadways.

- 6 -

stop so as to avoid injury to a pedestrian on the shortest possible notice. It is the presence of the intersection, not the position of someone therein, which determines the care required of the approaching driver.

DEGREE OF CARE REQUIRED AT AN INTERSECTION

The operator of a motor vehicle, at an intersection, has a higher duty or degree of care than is required in normal travel. He has the duty to look out for what is normally at intersections and to look for pedestrians who may be crossing that intersection. He must have his vehicle under control in such a manner that he normally would be able to stop if there is any impediment to his travel.

TCO at 9 (citations omitted). The trial court decided against giving these proposed charges to the jury on the basis that the proposed principles were covered in the standard negligence charges.

Appellant argues that the general negligence instructions given to the jury did not adequately explain to the jury the appropriate standard of care for the bus driver under the applicable law. Appellant's Brief at 29. She states that "the jury was entitled to know that Pennsylvania case law requires a higher duty of vigilance on the part of a driver entering an intersection…." *Id.* at 23. Appellant further suggests that "[i]t was not sufficient that the jury was charged on [section] 3730 [*sic*] of the Motor Vehicle Code (75 Pa.C.S.[] § 3730 [*sic*])[4] concerning careless disregard for the safety of persons and property." *Id.* at 25.

_____

[4] Again, we note that based on our review of the Motor Vehicle Code, we believe that Appellant meant to reference 75 Pa.C.S. § 3714, which defines "careless driving."

- 7 -

In response to Appellant's allegations, the trial court referenced *Galvin v. Einwechter*, 144 A.2d 471 (Pa. Super. 1958), in which this Court emphasized the significance of the circumstance where a motorist enters an intersection with the traffic light in his favor and stated:

> Although one approaching a street intersection must always be vigilant, he cannot be held to the same high degree of care at an intersection with a traffic light giving him the right of way as at an intersection where there is nothing to regulate the right of way. He need not approach an intersection with a green light quite so slowly, nor look so continuously for approaching traffic, first because he has a right to assume traffic on the intersecting street will stop for the red light and secondly because he must divide his attention between approaching traffic and the light.

TCO at 12 (quoting *Galvin*, 144 A.2d at 472-473).

> As noted by the trial court, in the instant case,

> the evidence was undisputed that [Mr. Griffin] had the green arrow when he began his turn. The jury watched the accident as it occurred on the video from the bus. It was for the jury to decide whether the driver exercised due care in light of the circumstances: the time of night, the rainy weather conditions, the type of intersection, the green arrow for the left turn, and the driver's familiarity with pedestrians crossing at that intersection.

*Id.* at 12-13. Thus, the trial court properly relied on *Galvin* in determining that Appellant's proposed jury instructions were not needed.

> In further support of its finding, the trial court opined:

> It was not necessary to delineate a specific articulation of the duty of a motorist approaching an intersection or the degree of care required at an intersection, when the [c]ourt instructed the jury to use their common sense and determine the care that a reasonably careful person would use and how that reasonable person would act in light of all the surrounding circumstances established by the evidence presented in the case. The jurors

- 8 -

would be able to draw upon their own experiences as pedestrians and/or drivers to determine what a reasonably careful person should have done in light of the circumstance proved at trial. Thus, this [c]ourt believes that Senior Judge Brenner's charge of general negligence and duty principles adequately covered the issues, did not confuse the jury, and did not contain statements that amounted to a fundamental error. The [c]ourt sees no error in the exercise of Senior Judge Brenner's discretion to not include [Appellant's] proposed supplemental charges on the duty of a motorist approaching an intersection and the degree of care required at an intersection, which may have been more confusing to the jury than helpful given the differing degrees of care required at an intersection depending on the type of intersection and the color of the lights at controlled intersections.

TCO at 13.

Additionally, Appellant requested that the trial court charge the jury with the standard jury instruction for the duty of a common carrier.[5]

---

[5] The suggested standard jury instruction in question, here, provides:

13.120 (Civ.) COMMON CARRIER'S DUTY OF CARE **TO PASSENGER**

A "common carrier" is a transportation service licensed to carry passengers or property.

Under Pennsylvania law, a "common carrier" must use the highest standard of care in [operating its vehicle] [and] [maintaining its equipment and facilities] [and] [transporting its passengers].

[*name of defendant*] in this case is a "common carrier" and *must* use the highest standard of care.

[*name of plaintiff*] claims that [*name of defendant*] did *not* use this highest standard of care.

If you find that [*name of defendant*] did not use the highest standard of care, then you must find [*name of defendant*] negligent.

*(Footnote Continued Next Page)*

Appellant's Brief at 30.  She avers that the court's refusal to do so resulted in extreme prejudice towards her, entitling her to a new trial.  ***Id.*** at 32.  In response, the trial court explained:

> Pennsylvania Suggested Standard Civil Jury Instructions contain three instructions regarding specific cases where special standard of care instructions should be given in regard to a common carrier.  They are:  13.120 Common Carrier's Duty of Care to Passenger, 13.130 Common Carrier's Duty of Care to Passenger-Sudden Stop, and 13.140 Common Carrier's Duty of Care to Disabled or Infirm Passenger.  There is no dispute between the parties that the bus, which injured [Appellant,] was a "common carrier."  The dispute centered on whether the suggested jury instruction 13.120 should be given to explain a common carrier's duty of care **to a pedestrian**, not a passenger of the common carrier.  This [c]ourt agrees with Senior Judge Brenner that as a matter of law the common carrier's duty of care is owed specifically *to its passengers* and it would have been error to charge the jury on the requested instruction.

TCO at 14 (emphasis added).

Appellant suggests that standard instruction 13.120 does not make any distinction between passengers and non-passengers.  Appellant's Brief at 31.  Her position, however, blatantly ignores the plain language in the title of all three of the standard suggested jury instructions regarding common carriers, which expressly limits the duty to passengers.  TCO at 14. We are also persuaded by the following analysis of the application of standard jury instructions for common carriers provided by the trial court:

*(Footnote Continued)* ————————

TCO at 14 (citation omitted) (italicized emphasis added in original; bolded emphasis added by this Court).

- 10 -

[Appellant] argues that the jury should have been instructed that [Appellees], as a common carrier, owed a duty to use the highest standard of care in operating its vehicle. However, [Appellant] failed to cite a single case where the jury was charged with 13.120 when there was not a factual dispute as to whether or not the injured person was a passenger at the time of the accident. *See Reilly v. Southeastern Pa. Transp. Auth.*, 484 A.2d 1390 (Pa. Super. 1984), *affirmed*, 489 A.2d 1291 (Pa. 1985).

The discussion in *Reilly* focused on whether a common carrier's duty of care towards the injured person had ended before the accident occurred. *Id.* In *Reilly*, [this] Court stated[:]

First, appellant argues that it was error for the trial court to charge on appellant's duty of care as a common carrier because when the accident occurred, this duty was not owed to appellee[,] Gerald Reilly. Appellant's argument would be persuasive had the facts been as appellant argues they were. However, the testimony was in conflict on the condition of the place where the bus stopped, and on what Gerald did when he alighted from the bus-whether he immediately ran in front of the bus or first took the cleared path to the sidewalk and then turned back and ran in front of the bus. Whether appellant's duty as a common carrier had ended as to Gerald, or in other words, whether when the accident occurred Gerald had had "a reasonable opportunity to alight and pass out of danger," *Harris v. DeFelice*, 379 Pa. 469, 473, 109 A.2d 174, 176 (1954), depended on how the jury resolved this conflict. Accordingly, it was not error for the trial court to instruct the jury on appellant's duty as a common carrier.

[*Reilly*,] 484 A.2d at 1391. This reasoning implies that had the jury found that Gerald was no longer a passenger[,] the common carrier would have owed him only a duty of ordinary care.

TCO at 14-15 (citations to record omitted). After careful review, we discern no abuse of discretion or error of law by the trial court regarding the jury instructions given in the underlying matter.

- 11 -

Appellant further avers that the trial court erred in allowing any reference to Officer Jarrouj's police report during trial testimony. Appellant's Brief at 32. Appellant states, "Officer Jarrouj did not witness the accident, he was not an accident reconstructionist, and he was not offered by [Appellees] as an expert. As such, his police report and any reference thereto should have been excluded from evidence as hearsay." *Id.* at 32-33 (citing *Harris v. Philadelphia Facilities Management Corp. and Danella Companies, Inc.*, 106 A.3d 183 (Pa. Cmwlth 2014)).

In response to Appellant's allegations, the trial court noted that she is correct in that "75 Pa.C.S.[] § 3751(b)(4) of the Motor Vehicle Code states 'the copy of the police report shall not be admissible as evidence in any action for damages or criminal proceedings arising out of a motor vehicle accident.'" TCO at 19. However, in the instant case, the police report was not admitted into evidence at trial. Rather, it was simply used to refresh Officer Jarrouj's recollection of his accident investigation. *See* Pa.R.E. 612(a) (providing "a witness may use a writing or other item to refresh memory for the purpose of testifying while testifying or before testifying").

Here, "Officer Jarrouj referred to his own report during the course of his testimony to refresh his memory. It was for this limited purpose that Senior Judge Brenner permitted the report to be utilized." TCO at 20 (citation to record omitted). We agree with the trial court's determination that this is an appropriate use of a police report by an investigating officer. *See Holland v. Zelnick*, 478 A.2d 885, 888-89 (Pa. Super. 1984) (holding

that the police officer who had taken down the information in order to prepare the police report, but who did not witness the accident, was permitted to refer to the police report in order to refresh his recollection during his testimony at trial).  Based on the foregoing, we discern no abuse of discretion by the trial court in its decision to permit Officer Jarrouj to refer to his police report for the purpose of refreshing his memory for his testimony at trial.

To the extent that Appellant avers that accident reconstruction expert John C. Scott's reference to the police report was improper, we deem her claim to be wholly without merit.  "The admissibility of expert testimony is soundly committed to the discretion of the trial court, and the trial court's decision will not be overruled absent a clear abuse of discretion."  ***Hatwood v. Hospital of the University of Pennsylvania***, 55 A.3d 1229, 1239 (Pa. Super. 2012) (internal quotation marks and citations omitted).  Moreover, the Pennsylvania Rules of Evidence state:

> [a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  *If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.*

Pa.R.E. 703 (emphasis added).  The information contained in police reports is of the type reasonably relied upon by accident reconstruction experts.  ***See, e.g., Wright v. Eastman***, 63 A.3d 281, 289 (Pa. Super. 2013).

The third issue raised by Appellant regarding the dismissal of her punitive damages claim appears to have been abandoned by Appellant in the

argument section of her brief. Pursuant to Pennsylvania Rule of Appellate Procedure 2119, which governs appellate briefs, "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Here, the issue is listed in Appellant's statement of questions involved, but is not developed at all in the argument section of her brief. "Issues not properly developed or argued in the argument section of an appellate brief are waived." *Kituskie v. Corbman*, 682 A.2d 378, 383 (Pa. Super. 1996). Thus, we are constrained to conclude that this issue has been waived.

Next, we address Appellant's challenge to the weight of the evidence to support the jury's verdict.

> Appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Phillips v. Lock*, 86 A.2d 906, 919 (Pa. Super. 2014) (quoting *In re Estate of Smaling*, 80 A.3d 485, 490-91 (Pa. Super. 2013)). "It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so

contrary to the evidence that it shocks one's sense of justice." ***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. Super. 2011).

As the trial court noted in assessing Appellant's weight of the evidence claim:

> In the case at hand, this substantial burden has not been met. Although [Appellant] argues this case of negligence is clear, the jury witnessed the collision between [Appellant] and the bus by viewing the video of the collision recorded from the bus as it made the turn. The [j]ury watched the driver as he looked at the corner and the intersection before he proceeded with the turn. The [j]ury viewed the conditions of the road, time of day, and weather through the video. The jury heard the driver's conversation with his girlfriend through his Bluetooth ear piece and watched the traffic light change. One question in the case was whether [Appellant] committed to the crosswalk before the bus committed to its turn. The jury heard differing evidence on that question. [Appellant] submitted a plethora of citations to the transcript of the trial and the testimony of witnesses and expert witnesses that would have supported a finding of negligence on the part of [Mr. Griffin]. [Appellees] countered in their Memorandum of Law in Opposition to [Appellant's] Motion[] with a list of transcript citations to the evidence presented at trial supporting the verdict of no negligence on the part of [Appellees]. Defense expert[,] John C. Scott, testified that there was "no evidence of any distracted driving." The jury heard [] Mr. Griffin testify that he "looked to his left and forward" at the intersection before and while making the turn, and did not "cut" the turn.
>
> In regard to negligence cases, the issue of a party's negligence is a question for the jury. ***Duquesne Light Co. v. Woodland Hills Sch. Dist.***, 700 A.2d 1038, 1046 (Pa. Cmwlth. 1997). The mere happening of an accident does not establish a party's negligence. ***Id.*** "It is within the province of the jury to determine the reasonableness of each party's actions and to reconcile conflicting statements." ***Strong v. Com.***, 817 A.2d [576,] 584 [(Pa. 2003)] [()citing ***Seewagen v. Vanderkluet***, 488 A.2d 21 (Pa. Super. 1985)[)]. In Pennsylvania, "it is well settled that a new trial will not ordinarily be granted on the ground that the verdict is against the weight of the evidence

where the evidence is conflicting and the jury might have found for either party." **Dayen v. Penn Bus Co.**, 69 A.2d [151,] 154 [(Pa. 1949)].

In this case, [Appellees] controverted [Appellant's] evidence and the jury decided [Appellant] did not meet her burden of proof. Here, because fact witnesses and expert witnesses presented conflicting versions of the facts of the accident and the driver's actions, it was properly the jury's function to render a credibility determination. **Strong**..., 817 A.2d [at] 882.... Finally, this motion is directed to the discretion of the [c]ourt and this [c]ourt, which did not view the witnesses or video recording at trial, finds no reason to hold that the verdict resulted from partiality, prejudice, ill-will, or bias. In conclusion, a new trial is not appropriate in this case because the verdict is not against the weight of the evidence.

TCO at 24-26 (citations to record omitted). After careful review, we ascertain no abuse of discretion by the trial court.

Finally, Appellant asserts that the trial court "made errors in evidentiary rulings which prejudiced [her] case in that certain key evidence was either admitted improperly or precluded improperly." Appellant's Brief at 21.

When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014) (quoting *Stumpf v. Nye*, 950 A.2d 1032, 1035-36 (Pa. Super. 2008), *appeal denied*, 962 A.2d 1198 (Pa. 2008) (citation and quotation marks omitted)).

In her brief, Appellant lists 16 instances where the trial court overruled objections or sustained objections which she claims collectively prejudiced her presentation of her case, requiring a new trial. *See* Appellant's Brief at 46-47. Appellant fails to identify, however, any specific errors regarding each of the enumerated instances, nor does Appellant provide any legal grounds in support of her assertion that these rulings were in error. Appellant merely states that:

> The net effect of these rulings, when taken as a whole, reveal clear errors of law and a manifest abuse of discretion, and are well beyond the pale of harmless error. Collectively, these evidentiary rulings made by the [t]rial [c]ourt precluded Appellant and her counsel from inquiring into relevant and probative areas that supported Appellant's version of the facts of this accident, and which called into question certain of the testimony of defense witnesses.

*Id.* at 47 (internal citations omitted).

"We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review." *Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1279 (Pa. Super. 2005) (citing Pa.R.A.P. 2119(b); *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa. Super. 2003)). *See also Commonwealth v. Ellis*, 700 A.2d 948 (Pa. Super. 1997) (holding issue waived where appellant failed to develop his argument, *i.e.*, present any reason as to how the court erred or how he has

been prejudiced, and failed to cite authority in support of his vague contention).  Moreover, we note that it is not the job of this Court to develop arguments on behalf of Appellant.  ***See Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007).  In fact, "when defects in a brief impede our ability to conduct meaningful appellate review, we may … find certain issues to be waived."  ***Id.***  Based on the foregoing, we deem Appellant's final issue to be waived.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2017